

**ORDERED in the Southern District of Florida on May 22, 2026.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

_____

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Case No.: 24-10741-PDR |
| RV SALES OF BROWARD, INC., | Chapter 7 |
|     Debtor. | |

_____/

GIGI STETLER,

    Plaintiff,

v.                                                                Adv. Proc. No. 26-01070-PDR


STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.,

    Defendant.

_____/

### ORDER GRANTING PLAINTIFF'S
### MOTION TO REMAND TO STATE COURT

Before the Court is a motion to remand a legal malpractice action to state court. The underlying facts are uncommon. A law firm that represented a business owner for several years before her company filed for bankruptcy later appeared in that bankruptcy as counsel to the Chapter 7 Trustee — in a capacity directly adverse to the very client it had previously represented years before. The former client has now filed suit in state court for malpractice, breach of fiduciary duty, and violations of the Florida Rules of Professional Conduct. The firm removed the case to this Court. Plaintiff Gigi Stetler then filed a Motion to Remand to State Court (the "Motion to Remand")[1] and related submissions.[2] The Court has reviewed all submissions and the record in the main bankruptcy case, *In re RV Sales of Broward, Inc.*, Case No. 24-10741-PDR. The Court heard oral argument on April 23, 2026.

The Court holds as follows. First, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b). The claims at issue do not "arise in" the bankruptcy case because they are rooted in an attorney-client relationship and legal advice that predate the bankruptcy by more than a decade, and because the duties allegedly breached — including those arising from the firm's subsequent adverse

---

[1] Adv. Dkt. No. 2. Unless otherwise noted, citations to "Main Dkt. No. ___" refer to the docket in the main bankruptcy case, Case No. 24-10741-PDR, and citations to "Adv. Dkt. No. ___" refer to the docket in this adversary proceeding, Adv. No. 26-01070-PDR.

[2] The related submissions include the Complaint (Adv. Dkt. No. 1); Plaintiff's Reply to Defendant's Opposition (Adv. Dkt. No. 9), filed March 20, 2026; Plaintiff's Supplemental Memorandum on Mandatory Abstention (Adv. Dkt. No. 10), filed April 3, 2026; Defendant's Memorandum of Law in Opposition (Adv. Dkt. No. 8), filed March 17, 2026; Defendant's Supplemental Memorandum of Law in Opposition (Adv. Dkt. No. 12), filed April 9, 2026; Plaintiff's Final Reply in Support of Mandatory Abstention and Remand (Adv. Dkt. No. 14), filed April 13, 2026; and Defendant's Notice of Supplemental Authority (Adv. Dkt. No. 15), filed April 22, 2026.

representation — are imposed by the Florida Rules of Professional Conduct, which apply in every forum and do not depend on the bankruptcy proceeding for their existence or enforcement. A claim whose legal basis exists independently of any bankruptcy cannot be said to arise in one, regardless of the forum in which the breach became apparent.

Second, "related to" jurisdiction is likewise absent. Any judgment entered in the state court action would run entirely in favor of Plaintiff personally; no estate asset is at risk, no estate liability is implicated, and the outcome of the litigation could have no conceivable effect on the administration of the bankruptcy estate.

Third, and in the alternative, even if jurisdiction existed, mandatory abstention under 28 U.S.C. § 1334(c)(2) would compel the same result, as this proceeding is based on a state law claim that is neither arising under nor arising in the bankruptcy case, and the state court is a fully capable forum for its adjudication.

For the reasons that follow, the Motion to Remand is granted, and this adversary proceeding is remanded to the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.

### **Background**

Two separate but related proceedings form the backdrop for this dispute, the bankruptcy case of RV Sales of Broward, Inc., and the state court malpractice action that Plaintiff filed against her former counsel.

## I.   The Underlying Bankruptcy Proceeding

On or about January 26, 2024, RV Sales of Broward, Inc. (the "Debtor") filed a voluntary petition for bankruptcy relief under Chapter 11, Subchapter V of the Bankruptcy Code. The case was subsequently converted to Chapter 7 by order dated June 20, 2024[3] and Kenneth A. Welt was appointed Chapter 7 Trustee. The Trustee applied to this Court for approval to retain Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. ("Stearns Weaver") as counsel pursuant to 11 U.S.C. § 327, and this Court entered an order approving that retention on June 25, 2024.[4] In that capacity, Stearns Weaver operated subject to this Court's supervisory jurisdiction, including with respect to compensation, which was subject to court approval under 11 U.S.C. § 330.

During administration, the Trustee determined that postpetition proceeds from vehicle sales had been directed by Gigi Stetler, the Debtor's principal, to accounts outside the bankruptcy estate. The Trustee sought and obtained multiple court orders requiring Ms. Stetler to provide a verified accounting of those proceeds. Ms. Stetler did not comply. After an evidentiary hearing, this Court entered a Final Judgment against Ms. Stetler in the amount of $679,710.73, inclusive of $103,108.28 in attorney's fees and costs, as a compensatory contempt sanction.[5]

---

[3] Main Dkt. No. 159

[4] Main Dkt. No. 167

[5] Main Dkt. No. 542

In defending against the contempt proceedings, Ms. Stetler asserted that she had structured her consignment operations based on legal advice received from Stearns Weaver during that firm's prior representation of her. This Court, in its Order Holding Gigi Stetler in Civil Contempt[6] squarely rejected that defense, finding that whatever advice may have been given during the prior representation could not excuse Ms. Stetler's failure to comply with the Court's unambiguous and repeatedly issued orders. The Court made no finding that the prior advice was professionally deficient or that it failed to meet any standard of care. This Court's prior orders speak for themselves and are not subject to recharacterization through selective quotation in motion practice.

Ms. Stetler also moved to disqualify Stearns Weaver as counsel to the Trustee based on its prior representation of her. Following a full-day evidentiary hearing, this Court denied the motion to disqualify, finding no evidence of a disqualifying conflict and no evidence that Stearns Weaver used any confidential information obtained during the prior representation.[7]

## II.   The State Court Action and Removal

On January 20, 2026, Ms. Stetler filed a Complaint for Legal Malpractice in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case No. 26-000947. The Complaint asserts three counts under Florida law: Count I for Legal Malpractice, Count II for Breach of Fiduciary Duty, and Count III

---

[6] Main Dkt. No. 453

[7] Main Dkt. No. 420, as amended, Main Dkt. No. 426

for Violation of Florida Rules of Professional Conduct constituting Negligence Per Se. No federal cause of action is pleaded.

The claims arise from two categories of alleged misconduct. First, Counts I and III as principally pleaded allege that Stearns Weaver provided negligent legal advice during the prior attorney-client relationship regarding the structure of consignment operations—advice allegedly given between 2009 and 2013, years before the bankruptcy was filed. Second, Count II and portions of Count III allege that Stearns Weaver, having previously represented Ms. Stetler, later accepted representation of the Trustee in a matter directly adverse to her, without proper disclosure, and used confidential information obtained during the prior representation against her in the bankruptcy proceedings. Plaintiff alleges damages in excess of $782,000, which as pleaded include the contempt judgment and fee award entered by this Court.

Stearns Weaver was served on January 27, 2026, and filed its Notice of Removal on February 25, 2026[8] invoking this Court's jurisdiction under 28 U.S.C. § 1334(b) on both "arising in" and "related to" grounds. Plaintiff filed the instant Motion to Remand on March 2, 2026.[9] This matter was fully briefed as of April 13, 2026.

---

[8] Adv. Dkt. No. 1; see also Main Dkt. No. 560; Plaintiff argues in her Reply that Defendant waived its right to remove by filing a motion for extension of time in state court. The argument is without merit. Stearns Weaver was served on January 27, 2026 and filed its Notice of Removal on February 25, 2026, within the thirty-day window established by 28 U.S.C. § 1446(b). Filing a motion for extension of time to respond to a complaint does not constitute the clear and unequivocal conduct inconsistent with the right to remove that waiver requires. See *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246-47 (11th Cir. 2004).

[9] Adv. Dkt. No. 2

## Legal Standards

Bankruptcy removals are governed by 28 U.S.C. § 1452(a), and remand for lack of subject matter jurisdiction is governed by 28 U.S.C. § 1447(c). Under 28 U.S.C. § 1447(c), a case must be remanded if the district court lacks subject matter jurisdiction—that is, when federal jurisdiction never existed and removal was improper at the threshold. Removal statutes are strictly construed against removal, and all doubts are resolved in favor of remand.[10] The removing party bears the burden of establishing federal jurisdiction.[11]

Federal district courts, and by referral, bankruptcy courts, have original jurisdiction over civil proceedings "arising under title 11, or arising in or related to cases under title 11."[12] Proceedings "arising under" title 11 involve a cause of action created by the Bankruptcy Code itself. Proceedings "arising in" a bankruptcy case are those that, by their very nature, could arise only in bankruptcy—administrative-type matters that have no practical existence outside of the bankruptcy context.[13] The governing test for "related to" jurisdiction in the Eleventh Circuit is whether the outcome of the proceeding "could conceivably have an effect on the estate being

---

[10] *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

[11] *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005).

[12] 28 U.S.C. § 1334(b).

[13] *See In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999).

administered in bankruptcy."[14] A merely speculative or attenuated connection to the estate is insufficient.

**Analysis**

The Court addresses two questions: first, whether subject matter jurisdiction exists under 28 U.S.C. § 1334(b), encompassing both "arising in" and "related to" grounds, and second, in the alternative, whether mandatory abstention under 28 U.S.C. § 1334(c)(2) independently requires remand. The Court finds that neither basis for jurisdiction exists and that, were jurisdiction found to exist, mandatory abstention would compel the same result.

## I. "Arising In" Jurisdiction Does Not Apply

"Arising in" jurisdiction is limited to matters that, by their very nature, could arise only in bankruptcy — proceedings that have no practical existence outside of the bankruptcy context.[15] The Court concludes that neither category of claims in this proceeding satisfies that standard.

Defendant's counsel relied principally during oral argument on *In re Tronox*.[16] The Court has reviewed *Tronox* carefully and finds it inapplicable on its facts. In *Tronox*, the law firm was retained after the petition date specifically to represent a class of tort creditors in the bankruptcy proceedings. The *Tronox* court emphasized that the alleged misdeeds—failing to object to competing creditors' proofs of claim,

---

[14] *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990).

[15] *See In re Wood*, 825 F.2d at 97; *In re Toledo*, 170 F.3d at 1345.

[16] *In re Tronox*, 603 B.R. 712 (Bankr. S.D.N.Y. 2019).

drafting deficient trust distribution procedures, failing to object to a fraudulent transfer settlement— related to bankruptcy-specific rights and tasks and could only have arisen in a bankruptcy context and that all of the allegations regarding the defendants' alleged malpractice are limited to things the defendants did (or did not do) during the course of the bankruptcy cases themselves.[17] The *Tronox* court further noted that the mere fact that conduct took place during a bankruptcy case is not enough to establish "arising in" jurisdiction.[18]

None of those conditions are present here. The core of Ms. Stetler's claim traces to an attorney-client relationship with and legal advice given by Stearns Weaver between 2009 and 2013, years before the bankruptcy was filed. That advice, and the professional duties governing it, existed entirely under Florida law, independent of any bankruptcy proceeding. The bankruptcy did not create the malpractice claim; at most, it may have revealed it. The filing of the bankruptcy petition, the conversion to Chapter 7, and the subsequent appointment of the Trustee provided the occasion and the forum in which Stearns Weaver's prior representation of Ms. Stetler became relevant and potentially adverse. But the occasion for a claim is not the source of a claim.

The professional duties allegedly breached, including competent advice, loyalty, and confidentiality, attached at the moment of the prior representation, existed independently of any bankruptcy proceeding, and would have been

---

[17] 603 B.R. at 722–23.

[18] *Id.*

enforceable under Florida law regardless of whether a bankruptcy was ever filed. The bankruptcy context surfaced the claim and provided the occasion for its filing, but that is insufficient to trigger "arising in" jurisdiction.[19] What matters under the Eleventh Circuit's standard is not where the alleged breach became apparent, but whether the claim itself could have existed outside of bankruptcy.[20] This one could. It existed the moment the prior representation ended and the duties it created remained in force.

Defendant might rejoin that at least some of the claims in the complaint—specifically, the conflicted employment theory and the misuse of confidential information theory—require in-bankruptcy acts as their operative elements. Without Stearns Weaver being retained by the Chapter 7 Trustee, the argument goes, there is no conflicting adverse representation. Without appearing adversarially in the bankruptcy, there is no occasion to deploy confidential information against a former client. Those acts occurred inside the bankruptcy, and so, on this view, those claims could not exist outside of it. The Court acknowledges the argument and rejects it. The duties underlying both claims do not arise from the bankruptcy. They arise from Florida Rule of Professional Conduct 4-1.9, which imposes on every lawyer continuing obligations of loyalty and confidentiality to former clients and prohibits adverse representation in the same or substantially related matter regardless of forum. Rule

---

[19] *See In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000) (en banc) ("Arising in jurisdiction is not a matter of timing but of the nature of the claim.").

[20] *See In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) (defining 'arising in' proceedings as 'matters that could arise only in bankruptcy').

4-1.9 applies in state court litigation, in federal litigation, in transactional matters, in arbitration, and in bankruptcy. The rule does not distinguish between forums. What it looks to is the prior attorney-client relationship and the nature of the subsequent representation—both of which are defined entirely by events that predate the bankruptcy by more than a decade.

Defendant's argument also proves too much. If the forum of the adverse representation determined where a former client conflict claim "arises," then a Rule 4-1.9 claim against a lawyer who appeared adversarially in a state court proceeding would "arise in" that state court proceeding—plainly not a basis for any federal jurisdiction. The proposition, stated that way, is untenable, and it illustrates that the forum of the breach is not the source of the duty. The source is the prior representation and the obligations it created. The bankruptcy was the setting in which those obligations were allegedly violated but setting and source are not the same thing. Plaintiff herself drew this distinction, perhaps more clearly than she realized, when she stated at oral argument that the malpractice occurred when Stearns Weaver sought employment in the bankruptcy case. She was not conceding that her cause of action arose in bankruptcy. She was identifying the moment at which the prior relationship—and the duties it imposed—first came into conflict with Stearns Weaver's new role as counsel to the Trustee. That is the moment the breach became apparent to her. It is not the moment the duty was created. The duty was created years earlier, under Florida law, in a relationship that had nothing to do with the bankruptcy.

11

Defendant also submitted additional supplemental authority in advance of the hearing.[21] The Court has considered the *Murray Energy* decision. Plaintiff has not had a full opportunity to respond, but the Court finds no prejudice in that regard, as *Murray Energy* does not change the outcome here.

Defendant relies on two holdings from *Murray Energy*: that "arising in" jurisdiction turns on a "but for" test, and that a court may consider defenses—not just the complaint—in assessing jurisdiction. Neither helps Defendant. On the "but for" test, the core of Plaintiff's claim traces to advice given years before the bankruptcy was filed. That claim existed under Florida law independent of any bankruptcy proceeding. The bankruptcy was where the consequences of that advice became apparent; under the Eleventh Circuit's standard that is not enough. In *Murray Energy*, by contrast, the alleged malpractice was negotiating a Chapter 11 plan—conduct that could only have occurred inside a bankruptcy case. The distinction is dispositive. On the defense point, *Murray Energy* found jurisdiction because the defenses required interpretation of a confirmed Chapter 11 plan, which is an order of the court. Here, Defendant's reliance on this Court's prior orders goes only to preclusion—a doctrine state courts apply routinely to federal judgments. That is not the same thing, and it does not establish "arising in" jurisdiction.

As to the consignment structure advice (Counts I and III as principally pleaded): those claims arise from legal advice provided during the prior attorney-client relationship, well before the bankruptcy was filed. They had full existence as

---

[21] *In re Murray Energy Holdings Co.*, 662 B.R. 604 (Bankr. S.D. Ohio 2024).

potential state law causes of action before any bankruptcy proceeding was commenced. These claims owe their existence to the Florida attorney-client relationship, not to the bankruptcy proceeding.

Defendant argued at oral argument that the operative question is not when the advice was given but what Ms. Stetler is actually complaining about, specifically, that Stearns Weaver is "attacking" its own prior advice in its role as Trustee's counsel. The Court is not persuaded. The problem alleged is not that Stearns Weaver is attacking the advice now, but rather that the advice was deficient when given. The bankruptcy context may have made the prior advice's alleged deficiencies apparent, but it did not give rise to the claim.

As to the adverse representation and use of confidential information claims (Count II and portions of Count III): this category presents a closer question, as the alleged misconduct occurred during the pendency of the bankruptcy case in connection with Stearns Weaver's role as Trustee's counsel. But the legal standards governing those claims are entirely creatures of state law, specifically Florida Rules of Professional Conduct 4-1.9 and 4-1.7, governing duties to former clients and conflicts of interest respectively. Neither provision derives from nor is informed by the Bankruptcy Code. An attorney's duties of loyalty and confidentiality to a former client do not arise from or depend on the existence of a bankruptcy proceeding. Those duties attach at the moment of representation, travel with the client when the representation ends, and remain enforceable under Florida's professional responsibility framework regardless of what subsequent proceedings the attorney

13

appears in. The claim that Stearns Weaver violated those duties by accepting representation of the Trustee adverse to Ms. Stetler is therefore a Florida professional responsibility claim that happens to have become apparent in a bankruptcy context—not a bankruptcy claim that happens to sound in malpractice.

The Court also addresses the argument that this Court's disqualification ruling, which found no conflict and no use of confidential information, creates "arising in" jurisdiction because adjudicating the malpractice claim will require interpreting that order. The Court rejects this argument. The existence of a prior ruling that may have preclusive effect in subsequent litigation does not transform a state law claim into one that arises in the bankruptcy case. Preclusion is a doctrine that state courts apply routinely, including to federal and bankruptcy court judgments. The state court's obligation to consider the preclusive effect of this Court's orders does not make the underlying malpractice claim a matter that "could not exist outside of bankruptcy." To hold otherwise would extend "arising in" jurisdiction to any state law claim in which a bankruptcy court order might serve as evidence or operate as a defense, a result plainly inconsistent with the jurisdictional limits Congress intended.

The same standard confirms that the authority on which Defendant relied in its written submissions is distinguishable.[22] In *Southmark,* the professional whose conduct was at issue was a court-appointed examiner performing duties created by and existing solely within 11 U.S.C. § 1104(c), a role with no analog outside of bankruptcy. Here, Stearns Weaver served as counsel to the Chapter 7 Trustee

---

[22] Defendant relied on *In re Southmark Corp.,* 163 F.3d 925 (5th Cir. 1999), in support of its argument.

pursuant to 11 U.S.C. § 327, but court approval of the retention does not transform the nature of the professional relationship. The duties allegedly breached are imposed by the Florida Rules of Professional Conduct, not the Bankruptcy Code, and would exist in identical form in any non-bankruptcy fiduciary engagement.

The Court acknowledges that Ms. Stetler's Complaint, as drafted, creates some ambiguity in that several of the alleged breaches are pleaded in terms of conduct that occurred during the bankruptcy case. Jurisdiction is determined by the nature of the underlying claim, however, not the form in which it is pleaded.[23] The root of every alleged wrong traces back to the prior attorney-client relationship and the duties that arose from it. A complaint that reveals a pre-existing state law claim through bankruptcy related facts does not thereby transform that claim into one that arises in the bankruptcy case.

For these reasons, the Court declines to find "arising in" jurisdiction over this proceeding.

## II.   **"Related To" Jurisdiction Does Not Exist**

The Court finds that "related to" jurisdiction under 28 U.S.C. § 1334(b) is likewise absent. The Eleventh Circuit's standard asks whether the outcome of a proceeding could conceivably have an effect on the estate being administered in bankruptcy and further requires that the outcome be capable of altering the debtor's

---

[23] *See Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).

rights, liabilities, options, or freedom of action.[24] Applied here, the standard is not satisfied.

The Debtor is a corporation in Chapter 7 liquidation with no ongoing operations, no remaining rights to be altered, and no freedom of action to be affected. The state court malpractice action runs entirely in favor of Plaintiff personally. No estate asset is at risk, no estate liability is implicated, and any judgment entered in state court would not create a new obligation running to or from the bankruptcy estate. The estate is not a party to the state court action and has no exposure to its outcome.

Defendant argued that a state court adjudication could generate inconsistent findings with respect to this Court's prior orders, specifically the Final Judgment, the Order Holding Gigi Stetler in Civil Contempt, and the disqualification ruling. The Court is not persuaded. This Court's prior orders are final and enforceable independent of any state court proceeding. A state court adjudication of professional negligence neither disturbs nor diminishes those findings. There is no realistic scenario in which a state court judgment could render this Court's contempt judgment unenforceable. The estate's rights under this Court's orders are fully fixed, and the risk of inconsistent adjudications is properly managed through preclusion principles that a state court is fully equipped to apply.

The Court has also considered whether Ms. Stetler's potential recovery in the state court action could indirectly benefit the estate by improving her ability to satisfy

---

[24] *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990).

16

the contempt judgment. At oral argument, Ms. Stetler confirmed that she seeks recovery from Stearns Weaver's professional liability insurer. A judgment debtor's improved financial condition does not, without more, bring proceedings affecting that debtor's net worth within the bankruptcy court's jurisdiction. The connection between a potential state court recovery and the bankruptcy estate is too speculative and attenuated to satisfy the *Lemco Gypsum* standard.

The Court further notes that while Plaintiff's Complaint references the contempt judgment of $679,710.73 as a measure of her damages, the source of that figure does not determine jurisdiction. What matters is whether the outcome of the litigation could affect the estate. A state court malpractice verdict against Stearns Weaver would create a liability running to Ms. Stetler personally and would not reduce, modify, or otherwise affect the estate's existing judgment.

Because subject matter jurisdiction is absent, removal was improper. The Court addresses mandatory abstention in Section III as an independent alternative ground for remand.

## III.   Mandatory Abstention is Required Under 28 U.S.C. § 1334(c)(2)

The Court need not reach mandatory abstention given its finding that subject matter jurisdiction is absent. Nevertheless, because the issue has been fully briefed by both parties[25] and because an independent alternative basis for remand supports the same result, the Court addresses mandatory abstention under 28 U.S.C. §

---

[25] Adv. Dkt. Nos. 10, 12, and 14

1334(c)(2) in the event a reviewing court disagrees on the jurisdictional question. Were jurisdiction found to exist, the Court would be required to abstain.

### A.    All Six Elements of Mandatory Abstention Are Met.

Even if jurisdiction were found to exist, remand would still be required. Each of the six statutory prerequisites to mandatory abstention under 28 U.S.C. § 1334(c)(2) is independently satisfied, and the statute's mandatory command leaves this Court no discretion to proceed.

### 1.    Timely Motion

Defendant argues that Plaintiff's invocation of mandatory abstention is untimely under Local Rule 5011-2, which requires a motion to abstain to be filed within 21 days of the notice of removal. Plaintiff raised mandatory abstention in her Reply[26] filed March 20, 2026, 23 days after the Notice of Removal was filed on February 25, 2026. The Court declines to find mandatory abstention unavailable on this basis.

Plaintiff is a pro se litigant who filed her Motion to Remand[27] five days after removal, well within both the local rule period and the 30-day window provided by 28 U.S.C. § 1447(c). That motion placed the jurisdictional question squarely before the Court. Mandatory abstention is a legal theory in support of that timely filed motion, not a separate motion subject to an independent deadline. Courts afford pro se litigants reasonable latitude in the presentation of their legal arguments, particularly

---

[26] Adv. Dkt. No. 9

[27] Adv. Dkt. No. 2

18

where the substantive motion was timely and the opposing party suffered no prejudice. Stearns Weaver had a full opportunity to brief the abstention issue[28] and the Court heard argument on the motion.

The cases Defendant cites do not support a different result. One decision merely held that mandatory abstention must be raised through a timely motion, without addressing what constitutes untimeliness or the consequences of procedural default.[29] Another simply observed that a motion filed twenty days after removal was timely.[30] Neither decision holds that a local-rule deadline bars a pro se plaintiff from raising mandatory abstention in connection with an otherwise timely motion to remand.

2.   State Law Claim or Cause of Action

Every cause of action in the Complaint arises under Florida law and requires application of Florida professional responsibility standards and tort principles. Count I Legal Malpractice is a Florida common law tort. Count II Breach of Fiduciary Duty arises under Florida fiduciary duty principles. Count III Negligence Per Se is predicated on alleged violations of the Florida Rules of Professional Conduct, Rules 4-1.7, 4-1.9, 4-3.3, and 4-8.4, administered by the Florida Supreme Court. No provision of the Bankruptcy Code governs the standard of care applicable to any count. This element is satisfied.

---

[28] Adv. Dkt. No. 12

[29] *Robinson v. Michigan Consol. Gas. Co.*, 918 F.2d 579 (6th Cir. 1990).

[30] *Dunkirk Ltd. P'ship v. TJX Cos., Inc.*, 139 B.R. 643 (N.D. Ohio 1992).

3.    "Related To" But Not "Arising Under" or "Arising In" Title 11

As found above, this proceeding does not arise under title 11 or arise in the bankruptcy case. For purposes of this alternative analysis only, the Court assumes without deciding that "related to" jurisdiction exists, as that assumption is necessary to reach mandatory abstention.

4.    No Independent Basis for Federal Jurisdiction

Both parties are Florida citizens — Plaintiff is a Florida resident and Defendant is a Florida professional association with its principal place of business in Miami-Dade County. Diversity jurisdiction is therefore unavailable, no federal question appears on the face of the Complaint, and the sole asserted basis for jurisdiction is 28 U.S.C. § 1334. This element is satisfied.

5.    Action Commenced in State Court

Plaintiff filed the State Court Action on January 20, 2026. This element is satisfied.

6.    Timely Adjudication in State Court

At the time of removal, the action had been pending only 36 days, with a motion to compel discovery under Florida Statute § 627.4137 already pending. Florida's circuit courts regularly adjudicate complex legal malpractice cases, and there is no evidence the Broward County Circuit Court could not try this case in a timely manner. This element is satisfied.

All six elements of 28 U.S.C. § 1334(c)(2) are satisfied. Were jurisdiction found to exist, the statute's mandatory command would independently require this Court

to abstain and remand this proceeding to the Circuit Court of the Seventeenth Judicial Circuit. Defendant's argument that mandatory abstention is inapplicable because "arising in" jurisdiction exists fails for the reasons set forth in Section I above.

B. Plaintiff's Request for Costs Under 28 U.S.C. § 1447(c) Is Denied.

Under 28 U.S.C. § 1447(c), a court may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has held that fee awards under § 1447(c) are not automatic; the standard turns on whether the removing party lacked an objectively reasonable basis for seeking removal.[31] Where an objectively reasonable basis exists, fees should be denied.[32]

Here, two independent reasons counsel against an award. First, while the Court has found jurisdiction absent, Defendant's removal was not frivolous. The jurisdictional arguments advanced, particularly regarding "arising in" jurisdiction in light of Stearns Weaver's court approved retention and this Court's prior orders, presented nonfrivolous questions of law. Reasonable counsel could have believed removal was proper.

Second, Plaintiff is proceeding pro se and has identified no actual out-of-pocket expenses incurred as a result of the removal. Section 1447(c) authorizes

---

[31] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

[32] *Id.*

reimbursement of actual expenses, not compensation for time or effort expended by a self-represented litigant. Absent a showing of actual costs, there is nothing to award.

## Conclusion

For the foregoing reasons, this Court lacks subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). Neither "arising in" nor "related to" jurisdiction exists. Plaintiff's malpractice claim traces to legal advice given years before the bankruptcy was filed; the bankruptcy may have revealed the alleged wrong but did not create it. No estate asset is at risk, and this Court's prior orders are final and enforceable regardless of any state court proceeding. In the alternative, mandatory abstention under 28 U.S.C. § 1334(c)(2) would independently compel the same result for the reasons set forth above.

Accordingly, the Court **ORDERS** as follows:

1. The Motion to Remand (Adv. Dkt. No. 2) is **GRANTED**.

2. This adversary proceeding is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case No. 26-000947. The Clerk of Court is directed to take all steps necessary to effectuate this remand.

3. Defendant's Motion to Dismiss (Adv. Dkt. No. 4) is **DENIED AS MOOT**, without prejudice to renewal in the state court forum.

4. Plaintiff's request for costs pursuant to 28 U.S.C. § 1447(c) is **DENIED**.

*###*

Copies to: all parties in interest